1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
CARLOS MANOTAS and JACQUELINE  .   Civil Action No. 1:17cv1223
MANOTAS,                       .
                               .
          Plaintiffs,          .
                               .
     vs.                       .   Alexandria, Virginia
                               .   October 30, 2017
OCWEN LOAN SERVICING, LLC;     .   1:23 p.m.
ONEWEST BANK; and              .
U.S. BANK, N.A.,               .
                               .
          Defendants.          .
                               .
. . . . . . . . . . .
```

TRANSCRIPT OF TRO HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:          WILLIS P. LANIER, III, ESQ.
                             10511 Judicial Drive
                             Fairfax, VA 22030


OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                             U.S. District Court, Fifth Floor
                             401 Courthouse Square
                             Alexandria, VA 22314
                             (703)299-8595




(Pages 1 - 11)




COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1                    P R O C E E D I N G S

2             THE CLERK:  Civil Action 17-1223, Carlos Manotas,
3    et al. v. Ocwen Loan Servicing, LLC, et al.  Will counsel
4    please note their appearances for the record.
5             MR. LANIER:  Yes.  Good morning, Judge Brinkema.  May
6    it please the Court, my name is Will Lanier -- Willis Lanier,
7    my proper name.  I'm here today on behalf of Mr. Gregory Bryl,
8    the attorney.  This matter had originally been assigned but
9    transferred from Judge Ellis to Your Honor, and Mr. Bryl was
10   anticipating being able to appear, as he had in the past, by
11   telephone.  He's out of state, couldn't get here timely enough
12   from Florida, so he called me and asked me if I would step in
13   on his behalf.
14            THE COURT:  Are you in his law firm?
15            MR. LANIER:  I am not.
16            THE COURT:  But you're admitted to appear in this
17   court?
18            MR. LANIER:  I am.
19            THE COURT:  All right.
20            MR. LANIER:  I'm an attorney in good standing here in
21   the State of Virginia, admitted to this court.  I don't appear
22   here very often but about 20 years ago.
23            THE COURT:  Well, Mr. Lanier, do you know anything
24   about this case?
25            MR. LANIER:  I have a --

3

1    THE COURT:  Because I, frankly, wanted to hear from
2 somebody who knows something about this plaintiff.  I want to
3 know, for example, whether Mr. Manotas is employed.  Do you
4 know if he's working right now?
5    MR. LANIER:  That I do not.  I know some of the --
6 I've been -- in the last hour or so, I've been able to
7 familiarize myself with some of the details of the case.
8 Personal intricacies of them, whether they are employed or not,
9 that I could not speak to.
10    THE COURT:  Well, the other problem I have is that
11 the proposed order is not a proper order for a TRO.
12    MR. LANIER:  Okay.
13    THE COURT:  I mean, a TRO has to, as you know, among
14 other things, it has to set a time for the preliminary -- for
15 the hearing on a preliminary injunction.  A TRO only lasts for
16 a short period of time.  There needs to be an amount of bond.
17 I don't -- how much is this property worth?
18    MR. LANIER:  I regret that I don't know the exact
19 amount of that, either.
20    THE COURT:  Well, what's the, what's the amount of
21 the loan?
22    MR. LANIER:  My -- and I have some of the exhibits
23 here.  I have seen correspondence that puts the current arrears
24 at approximately $58,000.  That's one of the attached exhibits.
25    THE COURT:  Well, actually, now that I'm looking at

4

1   it, all right, the borrower's note, it's a Great Falls
2   property, so I assumed it was worth something.  It's apparently
3   $1.4 million.  That was the loan.
4           MR. LANIER:  Okay.
5           THE COURT:  So I'm going to assume that the, that the
6   plaintiffs themselves -- or the plaintiff himself is not a --
7   is a person who has some means.  You normally can't have that
8   kind of a property without some means.
9           And I did note from your pleadings, because I have
10  had a chance to read it, that over $70,000 was paid during the
11  time in which there were efforts going on to get a reduced
12  mortgage payment.  So there are certainly -- there would appear
13  to be some equities here.
14          Has your colleague, Mr. Bryl, has he had any contact
15  with the attorney representing Ocwen?
16          MR. LANIER:  Again, I apologize.  That I can't speak
17  to.  I am certain, though, that if -- you know, they wouldn't
18  be in a foreclosure situation and in peril of losing their home
19  of 15 years if they -- obviously, if they could -- if they had
20  not fallen on some type of hardship.
21          I do know that there was some time back, it's been
22  approximately a couple of years, don't hold me to the exact
23  number of months or more, where they were offered a trial
24  payment plan.
25          THE COURT:  Right.

1    MR. LANIER: They had made those payments and then in
2    good faith continued to make payments further. They were
3    assured or told that, you know, then there would be a permanent
4    adjustment made to the mortgage going forward, and that did not
5    occur. That would be a breach on the part of the, of the
6    creditor.
7    They essentially sat on those rights or those -- sat
8    on the situation for some lengthy period of time, did not
9    reinstate or offer that planned permanent payment modification,
10   and then after some period of time, then they moved to, to file
11   this foreclosure.
12   THE COURT: All right. Now, when is Mr. Bryl getting
13   back into, into town?
14   MR. LANIER: Well, he can --
15   THE COURT: Is he, is he not any longer in
16   Washington, D.C.?
17   MR. LANIER: No. He has since relocated to Florida,
18   but he's still taking care of this case for them. They are
19   some longtime people that he's known, but he can make himself
20   available. He'll fly here tomorrow or Wednesday.
21   The sale is on Thursday. He has spoken to the
22   trustee. Essentially, the party that needs to be forestalled
23   is the, is the servicer who's pressing this. There is an
24   assurance from the trustee that if they are prohibited, then
25   the sale will not go through, and thus, the -- his request for

1  this temporary restraining order.

2         THE COURT: All right. Well, there's enough equity
3  that's been alleged in the complaint that I think at this
4  point, I don't find that there'll be irreparable injury to the
5  defendant by holding this up, so I am going to grant the
6  order -- the motion. However, the problem is there's supposed
7  to be a bond posted with any TRO that has enforceability, and
8  so you're going to need to contact Mr. Bryl and indicate to him
9  that he's going to have to come up -- they're going to have to
10 post a bond in this case for this to go forward.

11        MR. LANIER: All right, I understood. Okay.

12        THE COURT: All right.

13        MR. LANIER: Well, I thank you, Your Honor. Then
14 I'll save all my arguments for irreparable harm and the balance
15 of merits.

16        THE COURT: No, I think it's adequately alleged here
17 that we have a plaintiff who's lived in a property for some 15
18 years. The wife apparently has a brain tumor. I assume she's
19 still living, because I note it's Carlos Manotas et ux, so
20 that's with his spouse as well, I assume.

21        MR. LANIER: I guess -- again, those intricacies I'm
22 not intimately familiar with.

23        THE COURT: Right. And there does appear to be
24 evidence in this report, unlike a lot of these mortgage
25 records, where the plaintiff has some means and was, in fact,

7

1 trying to make this work, and it does appear at least from the
2 initial pleadings that the defendants, some version it, the
3 defendants did not comply with the agreement that they had
4 reached. So at this point, I would not find it appropriate for
5 the home to be sold at a foreclosure sale.
6       So I will grant an injunction, but it's contingent
7 upon your -- the posting of a $5,000 bond because I think
8 that's required, and that should more than adequately protect
9 the defendants in case this thing falls through.
10       And then we'll set a date for a preliminary
11 injunction hearing. How about next Thursday, November 9, at
12 ten o'clock? Any problem with that?
13       MR. LANIER: Next Thursday, November 9, at 10 a.m.?
14       THE COURT: Let me make sure there are enough days.
15 Hold on.
16       Yeah, that's the tenth day. Yeah.
17       MR. LANIER: Okay. And that would be for?
18       THE COURT: That will be for a preliminary
19 injunction, for a longer-term injunction. And that gives
20 Mr. Bryl time to get with the attorneys representing the
21 defendants, and I want counsel for defendants here, so he's got
22 to make sure this complaint gets properly served on everybody.
23       And we'll send a copy of the order, the only address
24 you-all have given us in this paperwork is to an attorney in
25 Maryland, an Abby Moynihan. That's the only one I've got

8

1   listed on your certificate of service.  So we'll go ahead and
2   send her a copy of the order.
3            But I'm going to require that the $5,000 bond be
4   posted tomorrow.  So actually, my injunction order isn't going
5   to go out until we get -- the Clerk's Office has notice that
6   the bond's been filed.
7            MR. LANIER:  With regards to the drafting of the
8   order, does he need to submit --
9            THE COURT:  No, I'll redo it, but again, it's not
10  going to be signed and it won't go into effect until the bond
11  has been posted, so he's going to need to move on that
12  promptly.
13           MR. LANIER:  Understood.  I will communicate --
14           THE COURT:  And in terms -- I'm sorry, in terms of
15  appearing here, if he's no longer practicing in this area, I
16  will -- because this is not that big a ticket item, I'll allow
17  him to appear by phone on November 9, provided that he's
18  prepared to give me all the background information that I'm
19  interested in knowing; that is, I want to know the financial
20  situation of this plaintiff at this time.  I think that's very
21  important.  And again, make sure that everything gets served on
22  the defendants, all right?
23           So you can tell him I'm going to grant his motion,
24  but it's not going to -- I'm not issuing any injunction or
25  temporary restraining order.  I'm not going to issue the TRO

1  until he's posted his bond.
2         MR. LANIER:  Of $5,000.
3         THE COURT:  Of $5,000.  And if he doesn't know how to
4  post it with this Court, he'll need to call the Clerk's Office
5  and find out, you know, because if he's going to use a surety,
6  the surety has to be one of the people who's registered with
7  this court.  If he wants to post cash, that's perfectly
8  acceptable, but he'll have to make those arrangements with the
9  Clerk's Office.
10        And once I'm advised that the bond has been posted,
11 then we'll go ahead and sign the order and send it out, okay?
12        MR. LANIER:  So cash or corporate surety.  And how
13 should that be communicated to your chambers?
14        THE COURT:  Our Clerk's Office will let us know.
15        MR. LANIER:  The Clerk's Office will do that, yes.
16        My father was always fond of saying that the weakest
17 link is greater than the strongest memory.  If you don't mind,
18 let me just briefly recite so that I can make sure that I
19 convey all of this properly to Mr. Bryl.
20        The TRO is granted.  He is to converse in the interim
21 with the opposing counsel.  Both sides are to appear.  Mr. Bryl
22 may appear by, telephonically.  The date for that will be
23 Thursday, November 9, at ten o'clock, for a hearing on the, on
24 the preliminary injunction.
25        The -- he is to reconfirm the address -- the Maryland

10

1  address that's here, and to be prepared to speak to the
2  financial circumstances of the plaintiff and to confirm that
3  all, the complaint and everything is at least served on the
4  defendant prior to that time.
5         Cash or corporate surety, $5,000 bond to be posted to
6  the Clerk's Office.  They're still nine to five?
7         THE COURT:  I think it's nine to 4:30 for finance.
8         MR. LANIER:  Okay.
9         THE COURT:  But what you should do while you're here
10 is go down to the Clerk's Office and talk to somebody in the
11 finance section.
12        MR. LANIER:  I will.
13        THE COURT:  You know, they can give you the details
14 as to how it's to be done.
15        MR. LANIER:  Okay.
16        THE COURT:  All right?
17        MR. LANIER:  Did I omit anything?
18        THE COURT:  I don't think you did.  You did a good
19 job.  It's tough standing in for another lawyer when you really
20 don't know the case, but you did --
21        MR. LANIER:  Well, yeah, because I'm reading the *Nash*
22 case and everything here, and I'm all ready in case I needed to
23 try to address that.  So thank you.
24        THE COURT:  All right.  So that's it then?
25        MR. LANIER:  All right, thank you, Your Honor.

1      THE COURT:  We'll recess court for the day.

2              (Which were all the proceedings

3                     had at this time.)

4

5              CERTIFICATE OF THE REPORTER

6    I certify that the foregoing is a correct transcript of

7   the record of proceedings in the above-entitled matter.

8

9

10                                 _____/s/_____
                                      Anneliese J. Thomson
11

12